UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>LLSTATE</small> I<small>NSURANCE</small> C<small>OMPANY</small>,

   Plaintiff,           Hon. Janet T. Neff

v.                   Case No. 1:12-cv-01351

R<small>ONALD</small> L<small>ARSEN</small>, et al.,

   Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Cross-Defendants Steven J. McKinley Agency and Steven J. McKinley's Motion for Summary Judgment (Dkt. 48) and Plaintiff Allstate Insurance Company's Motion for Declaratory Judgment, (Dkt. 56), which are referred to the undersigned by the Honorable Janet T. Neff for report and recommendation under 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

The following allegations are contained in Plaintiff Allstate Insurance Company's ("Allstate's") complaint. (Dkt. 1). On November 10, 2010, Kenneth Larsen was driving a motorcycle. His brother, Ronald Larsen, was a passenger. Kenneth Larsen crashed the motorcycle, killing himself and injuring his brother, Ronald Larsen. Kenneth Larsen owned the motorcycle in question. Kenneth Larsen owned insurance for his automobile, but did not have insurance coverage for his motorcycle. Jim Larsen (Kenneth's father) owned a policy purportedly insuring the

motorcycle that Kenneth owned. Kenneth Larsen did not reside with Jim Larsen during the time period relevant to this action. On July 11, 2011, Ronald Larsen initiated (in state court) legal action against the estate of Kenneth Larsen. Allstate is presently defending this action under a reservation of rights.

Allstate initiated the present declaratory judgment action seeking a declaration that: (1) Kenneth Larsen's automobile insurance policy neither provides coverage concerning the motorcycle accident nor obligates Allstate to indemnify Kenneth Larsen or Jim Larsen; (2) Jim Larsen's motorcycle insurance policy neither provides coverage concerning the motorcycle accident nor obligates Allstate to indemnify Kenneth Larsen or Jim Larsen; (3) Allstate is not required to defend the estate of Kenneth Larsen in the state court action; and (4) Allstate is not required to defend any future action against Jim Larsen.

Ronald Larsen, who is named as a defendant in the present declaratory judgment matter, subsequently asserted a cross-complaint against Steven J. McKinley and the Steven J. McKinley Agency (the "McKinley Defendants"). (Dkt. 35). In his cross-complaint, Ronald Larsen alleges that Kenneth Larsen and Jim Larsen "did insure the aforementioned motorcycle through Allstate Insurance Company's agent Steven J. McKinley and/or the Steven J. McKinley Agency after full disclosure by. . .Jim Larsen and/or Kenneth Ryan Larsen deceased of all the facts and circumstances of the aforementioned motorcycle's use prior to the November 10, 2010 accident." While not clearly stated, it appears that Larsen is alleging that McKinley negligently failed to obtain an insurance policy that would have covered the accident in question and the claims arising therefrom. Accordingly, Ronald Larsen requests that the Court enter a declaratory judgment that the coverage provisions in either Kenneth Larsen's automobile insurance or the aforementioned motorcycle

insurance provides coverage concerning the accident in question and obligate Allstate to indemnify the estate of Kenneth Larsen.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2 of I 006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence"

in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary*

*Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## DISCUSSION

### I.   Deposition Testimony of Jim Larsen

As noted, Jim Larsen had an Allstate motorcycle policy purportedly insuring the motorcycle involved in the crash in question. At his deposition, he testified:

Jim Larsen had a conversation with his son Kenny when Kenny was at an insurance agency attempting to buy coverage for his motorcycle. Kenny called him from the insurance agency. (Dkt. 54-2 at Page ID #406). Jim Larsen did not think he could buy coverage for someone else's vehicle. (Id. at Page ID #405). Jim Larsen thinks he remembers having a three-way conversation including the insurance agent. (Id. at Page ID #407). The agent, either directly or through Kenny, assured him it was "okay" to buy a policy for another person. (Id. at Page ID #407).  However, Jim Larsen was candid that he cannot say with certainty that he talked to the agent directly. (Id. at Page ID #419). Jim Larsen later met with the agent at his office and "everybody seemed to be on the same page." He doesn't remember any further discussion about the policy other than it was to be written for Kenny's

motorcycle. (Id. at Page ID #408-09). He met the agent several times after the telephone conference but had never met him before. (Id. at Page ID #409). Jim Larsen does not remember exactly any conversation he had during these meetings. (Id. at Page ID #410). The paperwork for the policy would have had to have been supplied by the agent. (Id. at Page ID #411).

Jim Larsen believes the agent he spoke with was Charles Patterson. (Id. at Page ID #413). When Jim Larsen went to the Steven J. McKinley Agency to sign up for the motorcycle insurance, he does not believe they went over in detail what they had previously talked over on the phone. (Id. at Page ID #423). Importantly, he recalls no specific conversation with Patterson. (Id. at Page ID #423). He also acknowledged not hearing the entire conversation between his son Kenny and the agent. (Id. at Page ID #424). He recalls no direct conversation with the agent regarding the motorcycle or insurance policy being placed in his name. (Id. at Page ID #428). However, he did overhear the agent speaking when he was on the telephone with Kenny. (Id. at Page ID #430-31). He heard the agent make the statement that, "Yes, you can do this. It's like buying a policy for someone." (Id. at Page ID #431). Finally, Jim Larsen believes he and his wife met with Patterson after his son's death and questioned whether there was any problem with his carrying the motorcycle policy and that they were told "no." (Id. at Page ID #416).

II.     **Deposition Testimony of Charles Patterson**

Charles Patterson was, during the relevant time period, an agent for McKinley. At his deposition, he testified:

Charles Patterson now knows that Jim Larsen is the father of Kenneth Larsen but he did not know that at the time the policy was set up. (Dkt. 62-1 at Page ID #719). The Steven J.

McKinley Agency is a captive agency for Allstate and was under the direction of Allstate. (Id. at Page ID #720). Kenneth did not qualify for a motorcycle policy through Allstate. (Id. at Page ID #724). Kenneth asked if his dad could purchase the policy and Patterson told him, "Yes, as long as the motorcycle was insured in the dad's name, his dad could get the policy." (Id. at Page ID #724). The Steven J. McKinley Agency eventually issued a motorcycle policy in Jim Larsen's name. (Id. at Page ID #725). He never had a conversation with Jim Larsen regarding Jim Larsen not operating the motorcycle or that it would be Kenneth Larsen who was actually operating the motorcycle. (Id. at Page ID #732). Instead, he recalls being quite clear with Kenneth that if the policy was done in the father's name the title to the bike would have to be in the father's name and the bike would have to be stored at the father's house. Kenneth Larsen indicated that that "was going to be done." (Id. at Page ID #733). He is not aware of any misrepresentations being made by Jim Larsen. (Id. at Page ID #735). Patterson always understood that Jim Larsen would have to have been the owner of the motorcycle. (Id. at Page ID #737). Patterson would not have written the policy if he knew that the motorcycle was going to be in Kenneth's name with the insurance policy in Jim Larsen's name. (Id. at Page ID #738). He had no discussion with Jim Larsen about who was to own the motorcycle that was to be insured. (Id. at Page ID #738-39). He would not have written a policy of insurance for someone who had no ownership interest in a vehicle. (Id. at Page ID #740). All premium payments were made and the policy was in effect at the time of Kenneth's death. (Id. at Page ID #743).

## ANALYSIS

I.     **Allstate's Motion for Declaratory Judgment (Dkt. 56)**

Allstate advances three arguments in support of its motion:

1. Allstate's motorcycle policy does not provide coverage "for a non-resident relative that is operating a non-owned motorcycle."

2. Allstate's automobile policy "does not provide liability coverage for events arising out of the use of a motorcycle that does not meet the definition of a motor vehicle under either the policy and/or the Michigan No-Fault Act."

3. Jim Larsen "has no insurable interest in the subject motorcycle." Allstate's reliance on facts to the contrary, "constituted material misrepresentation, fraud, and/or concealment of material facts for the sole purpose of evading anticipated premium." Accordingly, the motorcycle policy in question "is deemed void from its inception."

For the reasons that follow, I recommend that the Court grant Allstate's Motion for Declaratory Judgment on the first two grounds but not the third.

   A.     Motorcycle Policy

The undersigned recommends that a declaratory judgment be entered that Jim Larsen's motorcycle policy does not provide coverage for the accident in question. As Allstate argues, Jim Larsen acknowledged at his deposition[1] that at the time he purchased the motorcycle policy (and through the date of Kenneth Larsen's death), neither Kenneth Larsen nor Ronald Larsen resided with him. As Allstate argues, the definitions of "insured cycle," "non-owned cycle," and "resident," (see Dkt. 56 at 14-15), preclude coverage for the motorcycle accident that resulted in Kenneth Larsen's death.

---

[1] The undersigned has read the depositions of both Jim Larsen and Charles Patterson, Steven J. McKinley Agency's agent, in their entirety.

Ronald Larsen responds that McKinley and the Steven J. McKinley Agency (which was a "captive" agent of Allstate) knew that Jim Larsen did not own the motorcycle in question. According to Ronald Larsen, Kenneth Larsen did not qualify for motorcycle insurance through Allstate due to his driving history. Larsen further asserts that Kenneth Larsen then approached McKinley and/or representatives of the Steven J. McKinley Agency to determine if insurance for Kenneth Larsen's motorcycle could be procured and paid by Jim Larsen. Ronald Larsen asserts that McKinley and/or representatives of the Steven J. McKinley Agency were aware that Kenneth Larsen did not reside with Jim Larsen and that Jim Larsen did not own the motorcycle. McKinley and/or representatives of the Steven J. McKinley Agency nevertheless issued the motorcycle policy in question. Jim Larsen's deposition testimony, however (Dkt. 54-2), is more equivocal than Ronald Larsen's position. Specifically, Jim Larsen testified that he was not certain that he spoke directly with the McKinley agent before the policy was issued. *See also*, summary of Deposition Testimony of Jim Larsen, supra, and discussion of Fraud/Estoppel, infra.

Ronald Larsen submitted the deposition transcript of Charles Patterson, (Dkt. 62-1), who worked for the McKinley Agency at the time that Jim Larsen purchased the motorcycle insurance policy. Patterson testified, unequivocally, that he told Kenneth Larsen that his father could obtain insurance for a motorcycle only if his father owned the motorcycle in question. (Dkt. 62 at Page ID #738). While some of Patterson's testimony could reasonably be interpreted as supporting the theory that Patterson and/or McKinley knew or should have known that Jim Larsen was, in fact, purchasing the insurance for Kenneth Larsen and that rather than attempt to determine the relevant facts chose instead to willfully remain ignorant, Jim Larsen's testimony on point as to whether he ever had any direct contact of any nature with Charles Patterson is equivocal. However, it also clearly excludes

any deliberate misrepresentation on Jim Larsen's part. It does not establish, however, that Patterson ever said anything directly to Jim Larsen.  *See also*, summary of Deposition Testimony of Jim Larsen, supra, and discussion of Fraud/Estoppel, infra.

B. Automobile Policy

Allstate argues that it is not liable under Kenneth Larsen's automobile policy because neither the Michigan No-Fault Act nor Kenneth Larsen's automobile policy provides coverage for motorcycles. The undersigned agrees.

With respect to its interpretation of the Michigan No-Fault Act, Allstate is correct. The definition of motor vehicle under the No-Fault Act expressly excludes motorcycles (which are separately defined elsewhere in the Act). *See* Mich. Comp. Laws § 500.3101. The policy in question provides "automobile liability" coverage. (Dkt. 56 at Page ID #604). The policy, somewhat ambiguously, defines "auto" as "a land motor vehicle designed for use on public roads." (Dkt. 56 at Page ID #614). However, the policy explicitly and clearly excludes "motorcycles" from this definition. (Dkt. 56 at ID #624, ¶6(c)).

C. Jim Larsen's Interest in Kenneth Larsen's Motorcycle

Lastly, Allstate argues that under Michigan law an insured "must have an insurable interest of some kind in the subject matter of the insured" and that the "insurable interest must belong to the named insured." Allstate asserts that Jim Larsen had no insurable interest in the motorcycle and instead obtained the motorcycle insurance policy because Allstate would not provide a motorcycle policy to Kenneth Larsen and to save Kenneth Larsen from the presumably high cost of obtaining

a motorcycle insurance policy elsewhere. There is evidence (See, e.g., Dkt. 56 at Page ID #471-472) that supports Allstate's theory that Jim Larsen obtained the policy simply to save Kenneth money, and not because he had any insurable interest in the motorcycle. Jim Larson admitted as much in his deposition.

Allstate further argues that because Jim Larsen engaged in a material misrepresentation when he obtained the policy, Allstate is entitled to void the insurance policy. Ronald Larsen asserts, however, that Jim Larsen did not make any material misrepresentations, but rather was upfront and honest with McKinley when purchasing the insurance policy (i.e., Jim Larsen told Patterson through Kenneth that he was only purchasing it to save his son money and that "someone" indicated that such was appropriate or acceptable). The undersigned concludes that Allstate is correct that there is no coverage of Ronald Larsen under either Kenneth Larsen's automobile policy or the motorcycle policy purchased by Jim Larsen. But the undersigned flatly rejects that Jim Larsen ever made any misrepresentation to anyone because there is no evidence that Jim Larsen ever made any representation to Patterson or anyone else.

**II.     The McKinley Defendants' Motion for Summary Judgment (Dkt. 48)**

     A.     Did the McKinley Defendants Owe a Duty to Ronald Larsen

The McKinley Defendants argue that they cannot be held liable to Ronald Larsen under a negligence theory because they owed no duty to Ronald Larsen. In support of their motion, they cite to *Belfor USA Group, Inc. v. Alexis Manor Apts.*, 2009 WL 609558 (Mich. Ct. App., Mar. 10, 2009). Ronald Larsen alleges that the relationship between the McKinley Defendants and Allstate is one

of agent/principal not successor. However, the court concludes that this does not create a duty to Ronald Larsen that does not otherwise exist. See *infra* re: Estoppel.

The other Michigan case cited by the McKinley Defendants is *In re Certified Question from the Fourteenth District Court of Appeals of Texas*, 479 Mich. 498 (2007). In that case, the Michigan Supreme Court summarized the contours of the inquiry as to whether one party owes another a duty.

> [I]n determining whether a defendant owes a duty to a plaintiff, competing policy factors must be considered. Such considerations include the relationship of the parties, the foreseeability of the harm, the burden that would be imposed on the defendant, and the nature of the risk presented. Where there is no relationship between the parties, no duty can be imposed, but where there is a relationship, the other factors must be considered to determine whether a duty should be imposed. Likewise, where the harm is not foreseeable, no duty can be imposed, but where the harm is foreseeable, other factors must be considered to determine whether a duty should be imposed. Before a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable. Once it is determined that there is a relationship and that the harm was foreseeable, the burden that would be imposed on the defendant and the nature of the risk presented must be assessed to determine whether a duty should be imposed.

479 Mich. 498 at 508-09.

Also, the question of whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty. Defendant Ronald Larsen asserts that he was a third party beneficiary under Jim Larsen's contract of insurance. However, to impose a duty in these convoluted circumstances one would have to conclude that the Steven J. McKinley Agency, through Patterson, knew that Jim Larsen did not have an ownership interest in the motorcycle and that Kenneth Larsen did not reside with Jim Larsen.

Finally, it would not be foreseeable that Ronald Larsen would be in an accident with Kenneth driving for which there was no insurance coverage. As noted, the undersigned has reviewed

carefully the entire depositions of both Charles Patterson, the insurance agent, and Jim Larsen and cannot conclude that there is a genuine issue of material fact that would support the McKinley Defendants' knowledge of these facts and then attribute that knowledge to Allstate through an agency theory. The undersigned concludes that the fact that Jim Larsen, who was very candid in his deposition, was under the impression that his purchase of the insurance policy where he did not own the motorcycle and did not even use it was allowable cannot be attributed to Patterson or anyone else from the Steven J. McKinley Agency. The undersigned concludes that the most rational explanation is that Kenneth, either negligently or deliberately, miscommunicated Patterson's comments to his father, Jim Larsen. To conclude on these convoluted facts that the Steven J. McKinley Agency and/or Allstate had a duty to Ronald Larsen, who was simply a passenger on a motorcycle driven by Kenneth Larsen for which Kenneth Larsen had no valid insurance, is beyond any common sense interpretation of the undisputed facts.

       B.      Is Ronald Larsen's Cross-claim Timely

The McKinley Defendants also assert that Ronald Larsen's cross-claims, initiated on July 30, 2013, are untimely. The McKinley Defendants assert that the limitation period applicable to Ronald Larsen's cross-claims is provided by Mich. Comp. Laws § 600.5805(6) which provides that "[e]xcept as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice." They further assert that the limitations period began to run on August 28, 2009, as this is the date the McKinley Defendants "last provided professional assistance relative to the at-issue insurance policy." August 28, 2009 is the date (or near the date) that McKinley sold the

motorcycle insurance policy to Jim Larsen. This particular assertion is based on the following provision in Michigan law:

> a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

Mich. Comp. Laws § 600.5838(1).

It is odd that an insurance agent would take the position that he stopped servicing a client as of the date he *sold* a client a policy of insurance. It would seem that the agent would be deemed to be servicing the client so long as the policy remained in effect. In this respect, the McKinley Defendants' interpretation of the aforementioned statutory provisions is unreasonably narrow. Nevertheless, as the McKinley Defendants argue, even if Larsen's claim did not accrue until November 10, 2010, (the date of Kenneth Larsen's death), Larsen's cross-claims would be untimely. Obviously, the argument turns on the determination of when, precisely, Ronald Larsen's claims accrued.

As the McKinley Defendants recognize, "an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed [in § 5805] or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." Mich. Comp. Laws § 600.5838(2). It should be noted that this provision further provides that "[t]he plaintiff has the burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim." Mich. Comp. Laws § 600.5838(2). McKinley asserts that Larsen "knew he had a possible claim" when his attorney appeared in this action on January 24, 2013. Accordingly,

McKinley asserts, Larsen's cross-claims, filed July 30, 2013, are untimely. Larsen responds that his claim is for breach of contract for which the limitations period is six years. *See* Mich. Comp. Laws § 600.5807(8). Larsen also seems to suggest that McKinley is liable under a fraud or estoppel theory, although neither is adequately pled in his third-party complaint.

With respect to a negligence claim, Larsen has to establish that McKinley owed him a duty, which the undersigned has concluded he did not. Regarding a breach of contract theory, the undersigned has concluded there is no coverage under either policy, thus there was/is no breach of contract. Finally, the undersigned concludes that Ronald Larsen's fraud/estoppel theory has no legs. Thus, the statute of limitations issue appears moot.

### III.   Fraud/Estoppel

Cross-Claimant Ronald Larsen's theory of liability against both Allstate Insurance Company and the McKinley Defendants has morphed into a theory of fraud and/or equitable estoppel. However, neither Jim Larsen nor the estate of Kenneth Larsen has pled fraud at all against Allstate or the McKinley Defendants, much less with any degree of particularity. Further, while statements made by Patterson and/or Kenneth Larsen to Jim Larsen may have misled Jim Larsen, it is not clear how that would give rise to any theory of misrepresentation vis a vis Ronald Larsen.

An equitable estoppel theory does not fare any better against Allstate or the Steven J. McKinley Defendants. The Michigan Court of Appeals has recently had the occasion to address in two different opinions equitable estoppel in an insurance context. In the case of *Collins v. Farm Bureau Gen. Ins. Co.*, 2014 WL 2600580 at *5 (Mich. Ct. App. June 10, 2014), the court stated as follows:

> Plaintiff lastly contends that Farm Bureau is estopped from asserting plaintiff's nonresidency at the home as a defense. . . . In any event, there is no basis for estoppel. The elements of estoppel are:
>
> (1) a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party will be prejudiced if the first party is allowed to deny the existence of those facts.[*Michigan Nat. Bank v. St. Paul Fire & Marine Ins. Co.*, 223 Mich.App. 19, 23, 566 N.W.2d 7 (1997).]

*See also, Null v. Auto-Owners Ins. Co.*, 2013 WL 5731840 (Mich. Ct. App. January 1, 2013).

The undersigned has reviewed the deposition of the policyholder, Jim Larsen, Ronald Larsen's father, carefully and in its entirety. Mr. Larsen was very candid, and it appears that he was misled into believing that he could purchase insurance for his son Kenneth's motorcycle without owning the motorcycle and while his son was not residing with him. However, it is not at all clear whether the misleading was done by his son, Kenneth Larsen, or Patterson of the Steven J. McKinley Agency. Given that the burden is on Ronald Larsen and/or Jim Larsen to establish equitable estoppel and based on the evidence of record, including the unequivocal testimony of Patterson that Jim Larsen would have to own the motorcycle to insure it, defendants Ronald Larsen, Jim Larsen and the estate of Kenneth Larsen cannot meet this burden. Clearly, Ronald Larsen will suffer prejudice if Allstate and/or McKinley prevails on its claims. However, Ronald Larsen was not privy in any respect to obtaining the insurance in question. Thus, it is difficult to see how he could have been induced to believe any facts involved in the dispute. Likewise, he did not rely on any facts regarding the issuance of the insurance policy.

# CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiff Allstate Insurance Company's Motion for Declaratory Judgment, (Dkt. 56) be granted and that declaratory judgment enter as requested in its Complaint (Dkt. 1):

A. That the coverage provisions contained in the Allstate contract of automobile insurance do not provide coverage or require that Allstate indemnify the Estate of Kenneth Ryan Larsen, By its Personal Representative, Lawrence J. Benton, or Defendant Jim Larsen, for the liability asserted against Defendant(s) in *Ronald Larsen v. The Estate of Kenneth Ryan Larsen, Deceased, By its Personal Representative, Lawrence J. Benton,* Case No. 11-769-NI.

B. That the coverage provisions contained in the Allstate contract of motorcycle insurance do not provide coverage or require that Allstate indemnify the Estate of Kenneth Ryan Larsen, By its Personal Representative, Lawrence J. Benton, or Defendant Jim Larsen, for the liability asserted against Defendant(s) in *Ronald Larsen v. The Estate of Kenneth Ryan Larsen, Deceased, By its Personal Representative, Lawrence J. Benton,* Case No. 11-769-NI.

C. That since Allstate Insurance Company owes no coverage for the liability asserted against the Estate of Kenneth Ryan Larsen, By its

    Personal Representative, Lawrence J. Benton, it is also relieved from providing a defense to the Estate of Kenneth Ryan Larsen, and, accordingly, may withdraw counsel presently appearing on its behalf.

D. That since Allstate Insurance Company owes no coverage for the liability asserted against the Estate of Kenneth Ryan Larsen, By its Personal Representative, Lawrence J. Benton, it is also relieved from providing any future defense to Defendant Jim Larsen, relative to Defendant Jim Larsen's policy of motorcycle insurance.

The undersigned further recommends that Cross-Defendants Steven J. McKinley Agency and Steven J. McKinley's Motion for Summary Judgment (Dkt. 48) be granted.

              Respectfully submitted,

Date: September 11, 2014      /s/ Ellen S. Carmody
                 ELLEN S. CARMODY
                 United States Magistrate Judge

  OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).